Good morning. May it please this honorable court and distinguished panel, Judge Wiener, Judge Stewart, and Judge Prado, my name is Kent Twining. I'm here today on behalf of District Court in Houston. We have appeared asking for affirmative relief or remand with instructions to either grant or articulate reasons for denial on interest and costs, and I'm going to defer to the briefing on those issues primarily because I think we're here for some other reasons. ISMT is here as cross-appellant and is asking this court to remand the case for new trial, or in the alternative, remand the case for, and asking the District Court to elect remedies on the jury's findings. We disagree. We do not believe there's good, valid reasons for new trial. The jury was properly instructed, and we believe that Joy Pipe is entitled to all of its damages awarded against ISMT. Because the election of remedies doctrine does not apply under the facts of this case. The election of remedies doctrine was developed for the sole purpose of preventing a double recovery for a single wrong. That is not the case in this piece of litigation. There was no double recovery by Joy Pipe in this case. Instead, the jury awarded them their full measure of damages for two distinct and separate wrongs. Help me out in the procedure beginning. Ordinarily, you know, the pretrial order is a pretty good case where, you know, there's an assortment of claims, et cetera, et cetera, and lined out and on and even down to the jury verdict, et cetera, et cetera. Just back when, I assume there was one, was this area of delineation of damages or how specific, et cetera, et cetera, was that at all concerned back at that process? If so, help me get through sort of what happened. Well, we filed a pretrial order with the court and we put everybody on notice that we were looking for damages for both breach of implied warranty for merchantability and breach of implied warranty for a particular purpose. That soft steel was provided and from those breaches we were seeking damages. So everybody was on notice that both theories were in play. So did the jury give you a verdict as to one theory or were both theories taken into account in its decision? The jury gave us a verdict for both breaches of implied warranty of merchantability and damages to both. There were separate and distinct awards made for each breach. That's another point I need to stress for the court. And that was the way the case was presented to the jury and, I assume, argued to the jury? Yes, sir, it was. And I'm happy to answer those questions now or get into it in a second. No, well, go ahead. I'm not trying to derail you. No, that's fine. Both causes of action are permitted under Texas law. They are not mutually exclusive and alternative theories. There is no Texas case that says you can't recover under both theories. There is no Texas case, admittedly, however, that says you can't either. The Texas legislature, though, in adopting and codifying the UCC, specifically contemplated that you could have both a breach of warranty of merchantability and a breach of warranty for a particular purpose as a result of the same transaction. They said as much in comment two of the Texas Business and Commerce Code in section 2.315 and further said that those warranties would exist cumulatively. They would coexist and not be exclusive unless it was unreasonable under the facts of the case. And we would, you'll hear me say over and over under the facts of this case. We believe under the facts of this case we were entitled to submit both and we're entitled to recover awards for damages under both. Texas law does not prohibit recovery under these two different theories and breaches of implied warranty. Here the jury clearly contemplated that both breach of implied warranty for merchantability and for a particular purpose were in play. They sent a note back to the court specifically asking for clarification on the differences. They were clearly thinking about both theories being separate and distinct theories. They found that ISMT breached both the warranty of merchantability and breached the implied warranty for a particular purpose and awarded a different measure of damages under each. Both theories were compatible and coexisting in the jury's mind as well. We had evidence and presented evidence to the court. In this case, Joy Pipe ordered API, American Petroleum Institute, certified product conforming oil. Yes, sir? I'm sorry to break the thought, but I want to be sure what you are arguing. There were two companies paid, as I understand it. One was Texas Couplings and the other was Welded Tube. Am I right on that? Our injuries flowed differently from each one of those entities. Yes, sir. And was one of them paid because of the warranty of merchantability and the other on the warranty of fitness or were both paid for both? The awards for implied warranty of merchantability, that award for $520,000 was paid for both injuries. $520,000 matched to the penny, the amount of money that Joy Pipe owed to Texas Couplings for going out and inspecting a coupling stock in Couplings. The award made for the breach of implied warranty for a particular purpose was approximately $1.8 million and those injuries flowed from expenses and from Welded Tube of Canada withholding that amount of money from Joy Pipe for expenses they incurred in trying to clear up this mess. So the separate theories were assigned to separate claimants? The separate theories had separate awards flowing from the different claims by Texas Couplings and Welded Tube of Canada. There was no crossover? There was no crossover. It matched to the penny of the evidence presented to the jury. Sorry for the interruption. No, sir. If the product is not API certified, the evidence was that it was not merchantable. You had to know what you were getting. It all looks the same. ISMT is a producer of boiler pipe, automotive pipe, hydraulic pipe and API certified pipe. What we got was not an AIP product, although it was labeled so. It was an AISI product, American Iron and Steel Institute product. It was a grade of steel, 1012, which is used for boiler tubes. And the evidence the jury heard was that it is not suitable for any standard operation in the oil and gas field. What the jury found was that because of that, there was a breach of implied warranty of merchantability in this case. We also, besides ordering API certified product, ordered P110. P110 is a particular grade of steel with a particular hardness and a particular tensile and yield strength to be used in particular wells that are designed to have P110 pipe run down hole. We met with ISMT representatives. We discussed the importance of making sure that we got what we're ordering and they assured us that they could furnish us that product, including P110. Mr. Kalin, the ISMT representative at trial, testified and conceded that it was ISMT's sole responsibility to provide P110 if ordered. We relied on ISMT's assurances that were made to us in making the decision to order the pipe from them. Under these facts, the jury also found, in addition to breach of implied warranty of merchantability, that there was a breach of implied warranty for a particular purpose. The point here is that upon the evidence presented in this case, the jury clearly contemplated two different breaches of implied warranty. And found breaches for both under the facts and testimony that they heard in the case. You mentioned that the jury sent a note out? Yes, sir. What did the note say? I mean, in effect? It, in effect, was asking for clarification on the differences between breach of implied warranty of merchantability and breach of implied warranty for a particular purpose. What was the judge's response to the note? I just happened to have it with me. I'm going to read it to you verbatim. The response, which was agreed to, is that 8 and 10 both referenced the physical product, number 8 being breach of implied warranty of merchantability references the description of the coupling stock and the contracts and on the coupling stock labels. Number 10, breach of implied warranty for a particular purpose question references the known intended use of the product. That was the court's response to the note. So clearly the jury was contemplating both breach of implied warranty for merchantability and for a particular purpose. Not only did the jury make two distinctly different determinations on two different distinctly breaches of warranty, they awarded two different awards for two different injuries, two different losses. Were the dollar amounts awarded exactly as prayed for or were they calculated differently by the jury? They were awarded exactly as presented by our damage expert that he testified at trial, exactly to the penny. The one satisfaction rule does not apply here. There is more, was more than one injury involved in this case. For purposes, there were actually three distinct awards made, but one of them was solely for Fremack who is no longer a party. So if the court will allow me to not address that one, which was again to the penny what our expert testified to and the jury heard. The verdict forms split up in different amounts or there was just one total amount and we're speculating how they got to that total amount? They're split up in different amounts. $1,883,084 was awarded under the issue of breach of implied warranty for particular purpose. $520,058 was awarded under the issue of breach of implied warranty of merchantability. And then the non-conforming, there was another finding, $83,915.94 was awarded under another issue, breach of express warranty that the jury found against Fremack only on. You don't have much time left. What about pre and post interest? Yes, sir. Pre and pre-judgment interest in Texas is offered, is required unless the court articulates a reason in exceptional circumstances why it's not granted. Judge Hittner in this case did not articulate any reason why it was not awarded. Post-judgment interest is based upon 28 U.S.C. section 1961. I believe that ISMPT agrees that it's required and our cost, again, unless the court can articulate a reason in Texas, articulate a reason for not awarding them is typically awarded. So we're asking, and the court, as he did with the pre-judgment interest, has not articulated a reason for not awarding costs. All right. Now, does the record give us the exact amount of those three items, or do we have to remand for that to be determined if we go with the judge or with you? I believe that they are stated expressly in our brief, and there's evidence to support that. We didn't discuss it in the trial court level. We may have discussed it in our motion to enter judgment, but I think the numbers are expressly mentioned in our brief. Okay. But you're not sure whether they were given to the district court? I believe they were in our motion to enter judgment, yes, sir. Okay. We can check that. Okay. All right. Thank you, Mr. Twain. You've exhausted your initial run. You've saved a little time for rebuttal. Yeah, I think I was trying to reserve two or three minutes. You've got three minutes, based on here. You're in good shape. Okay. Thank you. All right. Thank you, Ms. Cohen. Good morning, Your Honors. Good morning. May it please the Court, my name is Lanie Cohen. I'm with Lazeri, Potter, Jacobus, and Moyle. My partner and I, Robert Jacobus, represent ISMT Limited. Welcome. Yesterday we had an army of men, and today I think you might be the only woman arguing. I'm honored to be here. Welcome. Did you try the case? We did together, yes. Okay. It's always good to have the people who were there when arguing these kinds of matters. So we're not only relying on the cold record, but you're having been there. That's a good thing. All right. So what I would like to do is very briefly address the pre-judgment interest issue in Joy Pipe's appeal. We'd like to start by stating that we will concede that the matter should be remanded to the district court in order for it to articulate the exceptional circumstances that existed in this case that caused the discovery of pre-judgment interest. And now I'd like to move on to the actual appeal we're here to argue and refocus the Court on what the test is for an election of remedies. Let me ask you about what you just said. Okay. I heard you. You know, you don't object to remand for the judge to articulate the extraordinary reasons, yada, yada, yada. That stops short of you conceding, I know that's a bad word, or acknowledging that ordinarily pre-judgment interest here would be entered. So translated, does that mean you have an objection when it gets back down below to the award of pre-judgment interest or that you otherwise take the position that this is an extraordinary circumstance for the non-award? And if that is the case, at least tell me briefly, what is the extraordinary circumstance from your standpoint? Well, we do believe that there are extraordinary circumstances here and those were briefed before the district court below. We believe that he took that into consideration and that's why he denied. I'm asking you what that is. We believe that the extraordinary circumstances here, and I think that it's been conceded to a point by Joy Pipe, they have rescinded their request for pre-judgment interest on the money owed to Texas Coupling, the reason being Texas Coupling has not been paid. We also believe that welded tube damages have not actually been paid. The purpose of providing pre-judgment interest is to pay for the money or the time that that money is not available for the plaintiff to use. In this case, Joy Pipe wasn't out any money out of pocket. There were accounts receivables that fluctuated between $1.9 and $3 million between Joy Pipe and Welded Tube. That balance went up and down as the parties did business. All right, I know you want to argue other points. I thought you could succinctly answer me because I wasn't trying to eat up all your time because I perceive if it goes back down, you know, you're not saying that they're entitled. So the brief said, and I guess you're taking it, is that the view taken by your client is that they didn't satisfy the typical prerequisite for getting pre-judgment interest in that they weren't out of any money. That's what you say in the brief and that's the view you're taking now, right? You say if that's true, that is tantamount to extraordinary circumstances for a non-award. That's what you're saying? That's correct. Okay, I just want to make sure I'm clear on what the view here is on that matter, particularly when you say extraordinary circumstances because I'm still unclear on that. But anyway, go ahead. You've answered my question, so you can go back to where you wanted to be if you want. I want to turn now and refocus the Court on what the test for election of remedies actually is. Joy Pipe doesn't mention the test in its briefing, in its response and reply brief. Well, he just said it wasn't applicable. Well, it is. He said it didn't apply here, so I could see why he wouldn't. Well, what we have here are two warranty claims, the warranty for merchantability and the warranty for a particular purpose. The warranty for a particular purpose subsumes the breach of warranty for merchantability. A good can't be both crafted for a general purpose and then also for a specific purpose. Once it's ordered for a specific purpose, it is no longer used for a general purpose. That warranty falls away, and the UCC supports that statement. Under 2-315, Comment 2, it's discussing the two warranties, and it refers parties to 2-317, the accumulation and conflict of warranties, and what happens when there are inconsistent warranties or conflict between warranties that are contained in a party's agreement. And what Comment 2 in full says to 2-315 is that if there is a conflict between the two remedies or between the two warranties, the warranty for a particular purpose is always going to trump any other warranty provided. So it's our position, and we believe that Texas law supports it, and I'll give you the case. COPAC v. National Seating and Mobility Inc., it's in our brief. There's also COGLIN v. Aquasport Marine Corps. And COPAC, the defective tilt-level mechanism cannot amount to both a breach of warranty of fitness for a particular purpose and breach of the warranty of fitness for ordinary purpose. Isn't that talking about a single item subject to two different warranties, one trumping the other? But here, and that's why I asked the question, you have Joypipe having one of its customers making one claim in a specific amount for a specific breach, another for a different amount for a different warranty breach. Isn't that distinguishing what you just read, where you only had one claimant and one amount? No, Your Honor, I don't believe that they're different. What we had here was Joypipe, the loss. They broke down those damages by who they had to pay back. That's different than what the injury is, and that's the question that needs to be answered. Who they had to pay and why, and how much, and each was different, a different claimant, a different warranty, and a different amount. Your Honor, I think what's missing from Joypipe's argument is that the test for election of remedies first has to, Joypipe has to meet two requirements in order to not have to elect its remedy. The first is that their recovery, the theory of recovery arises from separate and distinct injuries. Joypipe has not articulated once, either in its briefing or in its argument here, what those separate and distinct injuries were. They have always maintained that Joypipe's injury was its, quote, losses. That's how the jury instruction read. There aren't two separate injuries here. There may have been damages broken up by different buckets, but those also, those damages were exactly the same under each theory. It's not this court's What damages were exactly the same? You had one for half a million and one for a million eight. The way the jury instructions read, both of them are exactly the same. They're on page 26 and 27 of our opening brief. Interrogatory number 9 and interrogatory number 11, 9 is for the merchant ability, 11 is for particular purpose. They both say the same thing. What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Joypipe for its damages, if any, that resulted from a breach of each warranty? Consider the following elements of damages, if any, and none other. One, the cost of nonconforming coupling stock discovered after the breach. Two, the cost of mitigation efforts by Texas couplings billed to and incurred by Joypipe. Three, the cost to Joypipe for the account's receivable amounts withheld by welded tube for mitigation costs. That's how they broke up their damages, but the request for the damages under each warranty was exactly the same. The jury did not specify in their response whether they were giving money for cost of nonconforming coupling stock or whether they were giving money for the cost of mitigation efforts by Texas coupling or whether it was for mitigation costs by welded tube. It's just a number. We don't know what the jury was thinking, and it's not part of the test for election of remedies to consider that. If there's a — if there has to be a separate — Kennedy, is it possible that the jury was saying that one theory applied to one part of the damages and the other theory applied to the other part of the damages? It looks like interrogatory number 9 is referring to implied warranty of merchantability, and interrogatory 11 was implied warranty of fitness for a particular purpose. And is it — wasn't the jury saying one theory applied in one situation and the other theory applied in the other situation? Well, I think the problem with that is that all of these mitigation damages were incurred doing the same thing, following the same well failures. These weren't — and this — these — none of — neither of these requests or the case was broken up by what stemmed from one well failure and what stemmed from another well failure. Like, if you look at what welded tubes damages were, as shown to the jury, it included the cost of repairing the Vermilion well. It also included mitigation costs for testing and inspection by welded tube after the Vermilion failure and after the NuVista failure. So these aren't broken up as separate and distinct injuries or separate and distinct damages. They're all lumped in as one injury and one type of damage. When we look at the jury's award, based on those questions you just identified, are there separate amounts in each answer? What it says is they answer the question, one, in regards to the merchantability warranty, they said in regards to FREMAC, zero. I'm sorry? In regards to FREMAC, the co-defendant, zero. In regards to ISMT, it's $520,058. It does not express — It was awarded for one of these two creditors of Joy Pipe. It is. And then the answer for the other one, I assume you're going to read me, was $1,008,000. It is. But the issue here is the court is not allowed to look into what the jury decided. The court isn't supposed to assume that that's what the jury was thinking when they put down those numbers in both of those interrogatories. The test is very simple. It's very clear. There has to be a separate and distinct injury. There was not one here. And there has to be a separate and distinct damage award. There have to be separate under each one. If they're not, Joy Pipe was required to elect its remedy. And regardless of the numbers that the jury put down, the court should have required Joy Pipe to elect its remedy and enter judgment on the larger of the two recoveries, which would be under the particular purpose warranty. I'd like to just — before I move on to the jury instructions, I'm getting low on time. I want to just — let's see. Make sure I've covered everything on that. What's your response to the — what was the jury note about? The jury note was, again, a confusion on the jury's part. What are we to do with these two warranties? One is saying that this coupling is for any purpose or for the general purpose it was manufactured for, and one says it was a particular purpose. I think their confusion was, what are we supposed to do? Are both warranties in play here? And I think that's where it comes down to the issue that happened here, the problem that happened here. The warranty of merchantability is like a lesser-included offense of the warranty for a particular purpose. Joy Pipe was hedging its bets by including both warranties in its case. They didn't need to find that IS&T breached both of them. They only had to breach one or the other. It just doesn't sound to me like with no disrespect meant that there was a very good job of trying the case. If you put the case to the jury on these elements, there was a pretrial order. You know, we're not here on a summary judgment. You know, you had a pretrial order. You got a longstanding trial, federal trial judge, been on the bench for years, got good lawyers on both sides. You tee this up. The pretrial order is the map for the trial. Present the case. You both got evidence. We got all this. And so, you know, jury of laypeople get the charges, et cetera, and the cases are laid out. And they come back with an award. And then we get an appeal. We cross appeals here with all this seeming confusion over what was really tried, you know, what was really asked for. You know, the jury sends a note. There's an agreed response to the jury's question. And yet at the end, here you are, you know, with us. You say, well, no, there was one injury. Therefore, there's two damages. No, election of remedies applies. No, it doesn't apply. In a typical fully tried case we get up here, I just have to tell you, you wouldn't be fraught with all that lack of clarity. I'm not saying you lose on it, but it's not typically when we get a fully tried case here, it's pretty, you know, kind of easy to see how it was laid out, what it was due. This almost sounds like y'all are back at square one, you know, arguing over, you know what I mean, the claims, even to get out the gate. Is there one injury? Is there two? You know, strike the pleadings, et cetera. You know, we're put with almost a cleanup matter of trying to discern. You say, well, the jury didn't understand X. Well, the lawyer's job is to present the case in a way that the jury can understand, you know, what the claims are and try to answer. You say, well, it's not our job to discern or divine what the jury was thinking. Well, you're right. We shouldn't have to do it, but something went awry, you know, with the trial of this case. Again, I'm not casting aspersions, but I'm just trying to say this seems to be a lot of confusion in a fully tried case with good lawyers on both sides. Jury did the best it can, and we're supposed to sit it back down and say, we can't figure it out. You see what I'm saying? I absolutely see what you're saying, Your Honor. And I think that, you know, this leads to the other issue in our appeal. I mean, we spent a lot of time arguing over jury instructions. We asked for separate instructions based on each well failure. We believe that the jury should have considered each well failure separately. They should have considered proximate cause in a different way. Those jury instructions were all denied to us by the district court. And the entire case was tried by Joy Pipe as if this was one single specific injury. And . . . To that point, in your . . . and I'll give you a couple of minutes in addition, but to me this is important. Thank you. So in your side of the case, for example, I mean, in addition to whatever cross-examination you did of their people, I'm taking it that what you're arguing here was your theory of the defense in the trial. Is that accurate, that there was one injury or . . . No, our theory was that there were two separate well failures. Okay. Those had to be proven because they're what caused Joy Pipe's damages. And that the jury should have been instructed to determine both causation and damages by well failure. All right. So as part of your cross-appeal, the failure of the district judge to give the charge that you wanted, which would have not led to this confusion? Correct. Okay. Gotcha. There are actually three different inclusions essentially to the causation definition that we requested that were denied that we believe would have alleviated all of this confusion. Okay. Just specifically tell me which . . . you've got the record of the charges that you asked for that weren't given. They're identified by . . . I can give you the record on appeal numbers for the jury charge itself. Actually, I've got the numbers for . . . Not the ones they got. I thought I understood you say you asked . . . Oh, the ones that we want. Yes, they are in the record. I don't have the number of the record on appeal in front of me, but they are cited in our brief. Okay. Well, that helps me a lot. Okay. I got you. So that's what . . . because that's . . . Okay. So part of your cross appeals that had the judge given the charge you asked for, the jury wouldn't have been confused if they were confused, and that's error? We believe that's correct, yes. Okay. Shirley, give her two minutes. I can address those briefly. Joy Pipe was actually not required to prove causation in this case. That's . . . There are sort of three intertwining requests that we had, or jury instructions, or inclusions in the, excuse me, inclusions in the causation jury instruction that we had requested. They all sort of intertwine, and I think would have clarified all of these issues. The way that the jury instruction was written, Joy Pipe did not have to prove causation. There was . . . all they had to prove was their, quote, losses, which were these economic damages, and what those damages were. There was a step missed, and what should have been put in front of the jury was the fact that approximate cause can be, under the UCC, broken by a new and independent cause by either the buyer itself or a third party. And if you look at comment 13 of the UCC 2-314, and that's found in footnote 31 in the Pfizer Inc. first advanced monoblock corporation case that we cited in our brief, it says that in a breach of warranty action, an affirmative showing by the seller that the loss resulted from some action or event following his own delivery of the goods can operate as a defense. This comment doesn't limit it to just the negligence or fault of the buyer, as the Signal Oil case does, but also that third parties should also be considered. What Joy Pipe did here was got together with Welded Tubes and Texas Couplings, and they went out and inspected and tested everything after the Vermilion failure. The Vermilion failure gave them notification that there was a defect. Once that defect was known to them, and this is comment 5 to UCC 2-715, approximate cause was cut off. Joy Pipe's agent, Welded Tube, went out there, re-warrantied all those couplings that they tested, and one of them then ended up in the new Vista well and failed. That should have cut off ISMT's liability. That should have cut off approximate cause. None of that was given to the jury in the instructions. All right. Thank you. Thank you. Appreciate it. All right. Back to you, Ms. Twain. Court, please. Counsel's mistaken. We were required to show approximate cause. This is a breach of implied warranty case, a UCC case. The issues submitted were standard UCC issues, and the charge reads for both implied warranty, breach of implied warranty for merchantability and particular purpose in each issue, that the question is, was there a breach of those named below, and if so, was such a breach proximate cause of Joy Pipe's losses? If they want to take issue with the amount of damages that we're claiming, they have the opportunity to argue that to the jury. The jury has the opportunity to parse things out they think weren't proximately caused by a breach. We did prove proximate cause, and we are entitled to the damages that were awarded in this case. Are you saying that generally there cannot be recovery under both theories, but in this particular case there were two incidences, two different sets of damages, so that in this case there can be recovery under both theories? What I'm saying, Your Honor, is that based upon the facts of the case and the pleadings, depending on the case, yes, you may recover for both theories. And the total amount of the verdict is consistent with your presentation of the case? To the penny. What do you think about her position about the jury charges that they requested that weren't given? Your Honor, it's a UCC case. This is not a tort case. New and independent cause is a tort concept, not a contract or a breach of warranty concept. There was no abuse of discretion by Judge Hittner, who fully entertained argument and considered the issues presented by counsel. And abuse of discretion is the standard. We weren't seeking damages for well failure. Never mentioned, not anything from NuVista. The damages that we were claiming related to the Vermillion failure had to do with Welded Tube of Canada withholding payments that they made to repair that well for a customer. And it was money being withheld from us as a consequence of non-conforming pipe that they sold us. It was recovered as a consequential damage to breaching the warranty. ISMT has refused to take- Your Honor, you've run out of time. Finish your sentence and then you're kind of finished. In this case, to disallow a full recovery for Joy Pipe would essentially undermine a fundamental tenet in American jurisprudence. That is to make whole a plaintiff who has been wronged and injured. Okay, you're out of time. I'm not. Thank you. Was this a diversity case? Is that why it's in federal court? Yes, sir. All right. And it ought to be exhibit one for why complex commercial cases should not be tried to a jury. That's all my comment. Thank you, Your Honor. I'll keep that in mind. All right. Thank you, counsel, for your briefing. We'll study up on it and we'll decide it.